# EXHIBIT A – Plaintiffs' Complaint filed in State Court

Electronically Filed
1/29/2021 1:08 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
MARIA LOVENTIME U. ESTANISLAO, ESQ.
Nevada Bar No. 8059
D.R. PATTI & ASSOCIATES
720 S. Seventh Street, Third Floor
Las Vegas, Nevada 89101
Telephone: (702) 331-3391
Facsimile: (702) 385-9557
mloventime@drpfirm.com

CASE NO: A-21-828618-C
Department 16

DANIEL E. CARVALHO, ESQ.
Nevada Bar No. 5600
ROGERS, MASTRANGELO, CARVALHO & MITCHELL
700 S. Third Street
Las Vegas, Nevada 89101
Telephone: (702) 383-3400
Facsimile: (702) 384-1460
dcarvalho@rmcmlaw.com

*Attorneys for Plaintiffs*

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| YOANNIA COLAS-RODRIGUEZ, an individual; YUNAISY TORRES GARBEY; an individual; YANISLEY JIMENEZ-SANDERSON;<br><br>Plaintiffs,<br><br>vs.<br><br>LYFT, INC., a foreign corporation; DOES I through X; and ROE Corporations I through X, inclusive,<br><br>Defendants. | CASE NO.:<br><br>DEPT. NO.:<br><br><br><u>**COMPLAINT**</u> |

**TABLE OF CONTENTS**

I.   OVERVIEW.................................................................................................................... 2

II.  PARTIES, JURISDICTION & VENUE ........................................................................ 5

III. FIRST CAUSE OF ACTION ........................................................................................ 6

IV. SECOND CAUSE OF ACTION ................................................................................ 8

V. THIRD CAUSE OF ACTION .................................................................................... 9

VI. PRAYER FOR RELIEF ............................................................................................. 9

COMES NOW, Plaintiffs YOANNIA COLAS-RODRIGUEZ, YUNAISY TORRES GARBEY, and YANISLEY JIMENEZ-SANDERSON, by and through their counsel of record, MARIA LOVENTIME U. ESTANISLAO, ESQ., of D.R. PATTI & ASSOCIATES and DANIEL E. CARVALHO, ESQ., of ROGERS, MASTRANGELO, CARVALHO & MITCHELL, and complaint and alleges as follows:

## I. OVERVIEW

1. This Complaint arises from significant and permanent injuries sustained by Plaintiffs in a February 12, 2019, crash [hereinafter "the Crash"] that occurred near or about the intersection of Decatur Blvd. and O'Bannon Drive in the County of Clark, State of Nevada.

2. At the time of the Crash, Plaintiffs were passengers in a vehicle being operated by Abdelaziz Salouane for Lyft, Inc. [hereinafter "Lyft"]

3. Lyft receives applications from, and hires drivers, to ferry passengers for a fee that is unilaterally set by Lyft. Lyft operates software applications, including a driver-specific application on a mandatory driver smartphone. It also reserves the right to change the rates at its discretion. Its Terms of Service allow allows it set other fees and charges, such as service fees and cancellation fees. Lyft also requires riders to pay only through the app and prohibits riders from paying with cash, except for tips, or to use any other methods of payment, such as other smart phone applications. Of the fees collected from riders, Lyft deducts its service fee and platform fee. Cars that transport passengers for Lyft are easily recognizable, because Lyft gives each driver a decal and, in some areas, an LED sign called "Amp" to be affixed to the car and helps passengers identify the drivers matched to them through the Lyft app. Lyft tells its drivers that the "pink Lyft emblem . . . should be displayed in [the driver's] windshield." See https://help.lyft.com/hc/en-us/articles/115012927647-Safety-info-for-drivers.

/ / /

4.     To maximize profit, Lyft attempts to categorize their drivers as independent contracts and does not provide any maintenance service for their fleet of driver-vehicles nor regular daily inspections of vehicles to verify all equipment, including headlights, rear lights, brake lights, are operational. Aside from the initial background check before hiring a driver, Lyft does not request permission to, nor contacts former employers of their drivers. While Lyft tracks various driver data, including the number of times a driver like Mr. Salouane accepts and rejects customers, it does not check for safety issues or issues that impact the safety of the public.

5.     Lyft has control over the means by which it obtains customers, how the customer is connected to drivers such as Mr. Salouane, whether and how drivers like Mr. Salouane are compensated for their services, and the rates of compensation. It also retains the ability to unilaterally terminate Mr. Salouane's services, as well as restrict or expand benefits to Mr. Salouane based on certain factors set by Lyft. Lyft also controls the number of drivers that can be logged onto its app in driver mode at any one time and the number of hours its drivers can be engaged in driver mode before taking breaks. Thus, Mr. Salouane is an employee for purposes of respondeat superior liability.

6.     On February 12, 2019, one of the Plaintiffs hailed a ride through the Lyft app and, through that app, was advised that Mr. Salouane would be their driver. Shortly after picking up Plaintiffs, Ms. Colas-Rodriguez and Ms. Torres Garbey recall other vehicles honking at their vehicle and that the only light on Mr. Salouane's dashboard emanated from his cell phone.

7.     Upon information and belief, Plaintiffs believe and hereon allege that Mr. Salouane failed to properly operate or turn on his vehicle's lights.

8.     As Mr. Salouane was driving northbound on Decatur Blvd., approaching the intersection with O'Bannon Drive, in Las Vegas, Clark County, Nevada, his vehicle, while carrying the Plaintiffs, was violently struck in the rear by a vehicle driven by Ms. Aliuska Hernandez Reyes.

/ / /

/ / /

/ / /

9. The impact from Ms. Reyes' vehicle was so severe as to cause the airbags to deploy on her vehicle. Upon arrival of an investigating officer from the Las Vegas Metropolitan Police Department, Ms. Reyes informed the officer that she did not see Mr. Salouane's vehicle in front of her.

10. Prior to the Crash, Defendant Lyft hired drivers such as Mr. Salouane to ferry passengers for a fee, and at the time of the Crash, Mr. Salouane was in the course and scope of his employment, master-servant relationship, and/or joint venture with Lyft and/or DOES I-X and/or ROE Corporations 1-X who are the real party in interest employing drivers such as Mr. Salouane for their benefit and/or whom are engaged in a joint venture for profit. When referred to as "Defendant" herein, Plaintiffs intend to refer to not only Mr. Salouane, but also Lyft and whomever DOE or ROE Defendants were responsible for his employ, joint venture relationship, background check, and hiring and retention.

11. Upon information and belief, Lyft does not speak to prior employers of their drivers to determine safety-suitability prior to entering into an employment/joint venture for profit driving relationship that requires safe-driving. In the course and scope of his employ or joint venture with Defendants, Mr. Salouane acted negligently by, amongst other things, failing to properly operate or turn on his vehicle's lights while driving at night and to properly inspect and maintain his vehicle prior to driving at night, causing harm and injury to Plaintiffs.

12. As a result of the crash, Ms. Colas-Rodriguez and Ms. Torres Garbey suffered immediate injuries and were transported from the scene via ambulance to Spring Valley Hospital.

13. As a direct and proximate result of the crash, Plaintiffs suffered injuries resulting in them undergoing conservative treatment, which failed to relieve Ms. Colas-Rodriguez's and Ms. Torres Garbey's symptoms. Consequently, Ms. Colas-Rodriguez underwent reconstructive surgery at L5-S1, and Ms. Torres Garbey underwent cervical facet and branch blocks and radiofrequency denervation.

14. To date and despite these procedures, both Ms. Colas-Rodriguez and Ms. Torres Garbey continue to be symptomatic, to suffer severe pain, and to receive medical treatment.

///

## II.    PARTIES, JURISDICTION & VENUE

15.    Plaintiffs reallege and replead each and every allegation of the preceding paragraphs as though fully set forth hereunder.

16.    At all times relevant hereto, Plaintiff YOANNIA COLAS-RODRIGUEZ was and is a resident of Clark County, State of Nevada, and the events as described herein occurred in Clark County, Nevada.

17.    At all times relevant hereto, Plaintiff YUNAISY TORRES GARBEY was and is a resident of Clark County, State of Nevada, and the events as described herein occurred in Clark County, Nevada.

18.    At all times relevant hereto, Plaintiff YANISLEY JIMENEZ-SANDERSON was and is a resident of Clark County, State of Nevada, and the events as described herein occurred in Clark County, Nevada.

19.    Upon information and belief, at all times relevant hereto, Defendant LYFT, INC., is and was a foreign corporation doing business in the County of Clark, State of Nevada.

20.    The ROE and DOE Defendants named herein are and were at all times relevant herein responsible for the events alleged in this Complaint as they were and their identities are currently unknown and Plaintiff will seek leave to amend this Complaint when their identities become known. Upon information and belief, these individual(s) and entity(s) are and/or were the employers, agents, joint-venturers along with Salouane and each other and with Defendants, and/or other persons or entities related to the Defendants named herein and/or who were responsible for the retention and hiring and for whose benefit Salouane was driving. Plaintiff is informed, and alleges that at all times relevant hereto, Defendants, and each of them, were the agents, servants, employers, joint venturers, contractors, partners, owners, subsidiary, successor corporation, alias and/or alter ego of each of the remaining Defendants, and was, at all times relevant hereto, acting within the scope of said agency, contract, servitude, employment, ownership, subsidiary, alias or alter ego, and with the express or implied authority, consent, approval, control, influence and/or ratification of each other Defendant named herein.

///

### III.   FIRST CAUSE OF ACTION

### (Respondeat Superior)

21. Plaintiffs reallege and replead each and every allegation of the preceding paragraphs as though fully set forth hereunder.

22. Lyft advertises for the employment of drivers and entices drivers to apply by providing, upon meeting conditions imposed by Lyft, a means for them to rent a vehicle they can use to drive for Lyft through its Express Drive program. Upon information and belief, Mr. Salouane submitted an application to Lyft through its website or app and took advantage of Lyft's program that allowed him to rent a vehicle to use for the benefit of Lyft's business.

23. Cars that transport passengers for Lyft are easily recognizable, because Lyft gives each driver a decal and, in some areas, an LED sign called "Amp" to be affixed to the car and helps passengers identify the drivers matched to them through the Lyft app. Lyft tells its drivers that the "pink Lyft emblem . . . should be displayed in [the driver's] windshield." See https://help.lyft.com/hc/en-us/articles/115012927647-Safety-info-for-drivers.

24. Lyft sets the rates for the rides, which Lyft states is a rate particular to the driver based, amongst other things, the market area and the date the driver applied or was approved to drive for Lyft. It also reserves the right to change the rates at its discretion. Its Terms of Service allow allows it set other fees and charges, such as service fees and cancellation fees. Lyft also requires riders to pay only through the app and prohibits riders from paying with cash, except for tips, or to use any other methods of payment, such as other smart phone applications. Of the fees collected from riders, Lyft deducts its service fee and platform fee, both of which is set by Lyft.

25. Upon information and belief, Lyft uses projected demand to determine how many drivers it will allow to log onto the app in driver mode at any one time. *See Cotter v. Lyft*, 60 F.Supp.3d 1067, 1071 (D.Cal. 2015). Lyft also tracks the number of times a driver accepts a fare and deactivates drivers whose acceptance rate falls below a certain rate. *Id.* Lyft also tracks each driver's cancellations and may terminate a driver for high cancellation rates. *Id.* Lyft also terminates drivers whose ratings from passengers fall below a certain threshold. *Id.*

26. Lyft also controls actions of Lyft drivers while performing their duties. For example, Lyft tells its drivers that "[t]he inside of [their] car should be 100% clear at all times," including the trunk of their car. *See* [https://help.lyft.com/hc/en-us/articles/115013081708-Keeping-your-car-clean](https://help.lyft.com/hc/en-us/articles/115013081708-Keeping-your-car-clean). Lyft prohibits its drivers from being accompanied by an "unauthorized third party." Lyft's website instructs its drivers that they "must take a full, uninterrupted 6-hour break for every 12 hours [they're] in driver mode." *See* [https://help.lyft.com/hc/en-us/articles/115012926787-Taking-breaks-and-time-limits-in-driver-mode](https://help.lyft.com/hc/en-us/articles/115012926787-Taking-breaks-and-time-limits-in-driver-mode). To enforce this provision, the Lyft uses its app to monitor its drivers, and the app prevents drivers from being in driver mode for over 12 hours without a 6-hour break in between. *Id.* It tells its drivers to "[n]ever decline a ride based on a discriminatory reason or drop-off location . . .." *See* *[https://help.lyft.com/hc/en-us/articles/115013080768-Overview-of-ride-issues](https://help.lyft.com/hc/en-us/articles/115013080768-Overview-of-ride-issues)*. Drivers must use a vehicle approved by Lyft.

27. At the time of the Crash, Mr. Salouane was controlled by and driving for the benefit of Lyft, for a fee set by Lyft, and to be paid directly to Lyft through its app and, thus, was acting within the course and scope of his joint-venture for profit employment with Lyft.

28. At or about the time of the Crash, Mr. Salouane breached his duty of care to Plaintiffs, including but not limited to failing to properly operate or turn on his vehicle's lights at night, negligently, recklessly and/or carelessly maintaining, controlling and operating his vehicle, failing to use due care, and failing to operate his vehicle in a safe manner under existing conditions.

29. As a direct and proximate result of the negligence, carelessness, recklessness, wantonness, and willfulness of Mr. Salouane, Plaintiffs suffered severe bodily injuries, resulting in Plaintiffs undergoing medical treatment and several medical procedures, all to their total damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00). Despite these procedures, Plaintiffs COLAS-RODRIGUEZ and TORRES GARBEY continue to suffer severe pain and suffering and are receiving ongoing treatment.

30. Defendant Lyft is vicariously liable for the negligence, carelessness, recklessness, wantonness, and willfulness of Mr. Salouane under the principles of respondeat superior.

31. It has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action, and Plaintiffs are entitled to reasonable attorney's fees and costs incurred.

## IV. SECOND CAUSE OF ACTION

### (Negligent Selection, Hiring, Training, Retention, Supervision)

32. Plaintiffs reallege and replead each and every allegation of the preceding paragraphs as though fully set forth hereunder.

33. Disregarding safety to the public, Lyft undertakes no driver-safety training, training on the particular vehicles being utilized for Lyft's business, nor review of driver safety prior to hiring its drivers. Lyft also does not contact a prospective driver's employers to determine their fitness. After hiring drivers, Lyft undertakes no inspection of its driver's vehicles before or during their work for the benefit of Lyft and in furtherance of Lyft's business and provided no follow-up, in-service safety training.

34. Defendants and each of them negligently selected, hired, trained, retained, and supervised each other, including Mr. Salouane and the Defendant entities including but not limited to their employees and agents and ROE and DOE Defendants.

35. Defendants owed a duty of care in the hiring, training, retention, and supervision of their selected drivers, and breached said duty which breach was the actual and proximate cause of injury to Plaintiffs.

36. Prior to allowing Mr. Salouane to become a joint-venture for profit employee, Lyft did not request his permission to contact his prior employers, nor to inspect his vehicle for safety, and did neither. All of the failures noted were the actual and proximate cause of injury to Plaintiffs.

37. After allowing Mr. Salouane to become a joint-venture for profit employee, Lyft did not routinely inspect the vehicle Mr. Salouane used to further Lyft's business interests nor provide follow-up, in-service safety training.

38. As a direct and proximate result of the negligence of Defendants and each of them, Plaintiffs have incurred damages in an amount in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00).

39. It has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action, and Plaintiffs are entitled to reasonable attorney's fees and costs incurred.

## V. THIRD CAUSE OF ACTION

### (Joint Venture)

40. Plaintiffs reallege and replead each and every allegation of the preceding paragraphs as though fully set forth hereunder.

41. Lyft and Salouane entered into a contractual relationship wherein they jointly provide transportation services for a fee, which is then divided between them. Under their contractual arrangement, Lyft provides the mechanisms by which passengers contact and pay drivers such as Salouane. As such, Lyft and Salouane are joint venturers.

42. As joint venturers, Lyft is jointly and severally or vicariously liable for the negligence, carelessness, recklessness, wantonness, and willfulness of Mr. Salouane that actually and proximately caused Plaintiffs' injuries.

43. It has been necessary for Plaintiffs to retain the services of an attorney to prosecute this action, and Plaintiffs are entitled to reasonable attorney's fees and costs incurred.

## VI. PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS, expressly reserving the right to amend this Complaint at the time of the trial of the action herein to include all parties and items of damage not yet ascertained, demands judgment against Defendants LYFT, INC., DOES I through X, and/or ROE CORPORATIONS I through X, and each of the Defendants, jointly and severally, as follows:

1. For general damages in an amount in excess of $15,000.00;
2. For special damages in an amount according to proof at trial;
3. For lost wages and loss of earning capacity according to proof at trial;
4. For exemplary and punitive damages in accordance with NRS § 42.005;

/ / /

/ / /

/ / /

5. For applicable pre-judgment and post-judgment interest as provided by law;

6. For an award of reasonable attorney's fees and costs of suit; and

7. For such other and further relief as the Court may deem just and proper.

DATED this 28th of January, 2021.

D.R. PATTI & ASSOCIATES

/s/ Maria Loventime U. Estanislao

MARIA LOVENTIME U. ESTANISLAO, ESQ.
Nevada Bar No. 8059
720 S. Seventh Street, Third Floor
Las Vegas, Nevada 89101
Telephone: (702) 331-3391
Facsimile: (702) 385-9557
mloventime@drpfirm.com
*Attorneys for Plaintiffs*
